## Ex parte SHORT.

(District Court, N. D. California, First Division. September 5, 1918.)

### No. 16417.

1. ARMY AND NAVY ☞20—SELECTIVE DRAFT ACT—CLASSIFICATION—POWERS OF BOARD.

   While the action of the local board becomes final against a registrant under the Selective Draft Act (40 Stat. 76), unless appealed from in five days, a local board, having given a registrant a classification to which his questionnaire showed he was not entitled, may correct the error some months later.

2. ARMY AND NAVY ☞20—SELECTIVE DRAFT ACT—"ORDAINED OR REGULAR MINISTER."

   Registrant, whose questionnaire showed his ministerial work ended shortly after registration and before filing the questionnaire, held not entitled to deferred classification under the regulations defining an "ordained or regular minister" as a person who has been ordained, etc., or one who as his customary vocation preaches, etc.

   [Ed. Note.—For other definitions, see Words and Phrases, First Series, Ordained Minister.]

In the matter of the application of the wife of William Short for a writ of habeas corpus to secure his discharge from the custody of military authorities. Writ denied, and Short remanded to the custody of military authorities.

Wm. T. Kearney, of San Francisco, Cal., for petitioner.

John W. Preston, Sp. Assist. Atty. Gen., and Casper A. Ornbaun, both of San Francisco, Cal., for respondent.

DOOLING, District Judge. The wife of William Short seeks his discharge on habeas corpus from the custody of the military authorities. The record shows that Short, who will be designated herein as the registrant, on January 14, 1918, returned to his local exemption board his questionnaire, in and by which he claimed exemption as "a regular or ordained minister of religion." In support of such claim he stated:

That "he had been admitted to Unitarian ministerial fellowship in January, 1916, at Palo Alto, Cal., and that on June 5, 1917, he was minister of Palo Alto Unitarian Church."

To the question, "State place and nature of your religious labors now," he returned no answer; but in response to the question, "Give all occupations at which you have worked during the last 10 years, including your occupation on May 18, 1917, and since that date, and the length of time you have served in each occupation," he answered:

"Unitarian minister 1 year and 10 months. From May 18 to June 25, Unitarian minister, time included above. Chairman Northern California branch Peoples' Council (temporarily) 5 months. Student for balance of time during 10 years."

Upon these answers he was placed in class VB; that is to say, in the class of a regular or duly ordained minister of religion.

On June 6, 1918, a letter was sent to the local exemption board by the United States attorney, stating that registrant—

"registered for the draft at Palo Alto on June 5, 1917. At that time he was acting as a minister in the Unitarian Church of that town, but shortly thereafter resigned from the church and has not been connected in any way with any church since, but has, on the contrary, devoted his time to the activities of the Peoples' Council, which organization is decidedly unpatriotic in my opinion. I believe that Short should be reclassified and compelled to do military service, other things being equal."

Also the intelligence officer of the War Department advised the board by letter as follows:

"This is to advise you that investigation of Wm. Short discloses that he has not practiced his profession as a minister since July 1, 1917, and his classification should therefore be changed."

Upon receipt of these letters the local board on June 6, 1918, reclassified him placing him in class 1A, and duly notified him of that fact.

From this reclassification he appealed to the district board, which on June 15th denied the appeal.

Thereafter, and on July 19, 1918, he was arrested and on July 20, was by the local board for division No. 1 in San Francisco, certified as a deserter, and delivered to the commanding officer of the United States army, and now is in the custody and under the control of such officer. These are the facts as disclosed by the record. The only questions of any importance which they present are: (I) As to the power of the local board to change its ruling upon registrant's classification practically five months after such classification was made; and (II) was such change made arbitrarily and in disregard of the evidence presented and of the registrant's rights?

[1] The action of the local board becomes final as against the registrant under the regulations, unless appealed from within five days, but does not become final as against the government at any time. If the local board has made an error in a registrant's favor, and awarded him a deferred classification to which his questionnaire shows he was not entitled, I find nothing in the law or the regulations which would prevent the board from correcting that error, if and when it is called to its attention. The result of such procedure would only be that for the period of time during which the error remained uncorrected the registrant would enjoy a deferred classification and an exemption from duty to which he was not entitled, a situation about which he could not be heard to complain.

[2] An examination of registrant's questionnaire shows that that is exactly what happened here. It shows that on June 5, 1917, when he registered he was a regular minister of religion, had become such by being admitted to Unitarian ministerial fellowship in January, 1916, at Palo Alto; that the place and nature of his religious labors on June 5, 1917, was minister of Palo Alto Unitarian Church.

As to the place and nature of his religious labors on January 13, 1918, the date of his questionnaire, no statement is made; but it ap-

pears that the whole period of his activities as a Unitarian minister was 1 year and 10 months, and that a portion of that period was from May 18 to June 25, 1917, or, in other words, that he was engaged in his ministerial work for only 38 days after the passage of the Selective Service Law; that for 5 months, presumably the 5 months immediately preceding January 13, 1918, his occupation was chairman of the Northern California branch of the Peoples' Council, which work apparently he took up within 2 months after June 25, 1917, the last date that his questionnaire shows him to have been engaged in a ministerial occupation.

The law exempts "regular or duly ordained ministers of religion," and the regulations define a duly ordained minister of religion as:

"A person who has been ordained, in accordance with the ceremonial, ritual, or discipline of a church, religious sect, or organization established on the basis of a community of faith and belief, doctrines and practices of a religious character, to preach and teach the doctrines of such church, sect, etc."

Registrant at no time came within this definition. A regular minister of religion is defined to be:

"One who as his customary vocation preaches and teaches the principles of religion of a church, a religious sect, or organization of which he is a member, without having been formally ordained as a minister of religion, and who is recognized by such church, sect, or organization as a regular minister."

Nor did registrant, at the time he filed his questionnaire in January, 1918, bring himself within this definition. His last service as a minister had been in June, 1917, and since then his occupation was not that of a minister, but chairman of the Peoples' Council. Nor did his affidavit, presented on June 10, 1918, to the local board, show that he had again taken up the occupation of a minister, so that the most that appears from the record here is that registrant from January 21 to June 6, 1918, enjoyed an exemption to which he was not at all entitled. It is my opinion that it was not only well within the power of the local board, but that it was also its plain duty, properly to classify registrant when its attention was called to the error which it had made, and particularly when the facts upon which the correction was based appeared of record in registrant's own statement.

Registrant has suffered no injury at the hands of the local board, and the writ of habeas corpus is therefore discharged, and he is remanded to the custody of the military authorities.